## UNITED STATES DISTRICT COURT.

### IN THE MATTER OF HENRY BERNSTEIN, an involuntary bankrupt.

The lien of a levy made under an execution issued on final judgment obtained in a state court, before the filing of a petition of a creditor to declare a debtor an involuntary bankrupt, is preserved by the bankrupt act, and is to be respected by the United States District Court, sitting in bankruptcy, whether the said court takes to itself the administration of the property on which the lien is imposed, and applies it towards the satisfaction of the lien, or whether it allows the state officer who is executing the process of the state court to do so.

But it must appear that the judgment and execution of the state court are obtained *bona fide*, and without collusion with the debtor.

*In Bankruptcy, December Term*, 1867.
*Before Hon.* SAMUEL BLATCHFORD, *District Judge.*

THIS question arose on a motion made by Wilmerding, Hoguet & Co., execution creditors of Henry Bernstein, a debtor declared to be an involuntary bankrupt, on the petition of certain of his creditors to set aside an injunction granted under the 40th section of the bankrupt act, restraining the sheriff of the city and county of New York from selling certain goods of the bankrupt, which he had levied on and advertised for sale, and was about selling, when the injunction was served on him, under and by virtue of an execution directed to said sheriff, on a judgment obtained by said Wilmerding, Hoguet & Co., against the above bankrupt, in the supreme court of the state of New York. The application was made as well by and on behalf of said sheriff, who had incurred a large amount of charges and expenses in custody, &c., of the goods, as on behalf of the said judgment creditors. Pending the application to dissolve, the court modified the injunction so as to permit the sheriff to sell.

The facts of the case are stated in the opinion of the court.

D. McMAHON, *counsel for the execution creditors, and for the sheriff of New York.*

In the matter of Henry Bernstein.

There is no dispute as to this fact, namely, that Wilmerding, Hoguet & Co. had obtained a *bona fide* judgment, execution and levy, and were proceeding to sell, a month before the commencement of these bankruptcy proceedings, which judgment, levy and execution were not by the procurement of or collusion with the debtor, but were vigorously opposed by him.

Is that lien divested by these proceedings?' We say not, and hence this application.

The sections of the bankrupt act having any bearing on the subject are :

Section 14, which speaks of the title of the assignee, says, the title to all such property, real and personal, shall vest in said assignee, *although the same is then attached on mesne process, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings.*

It nowhere in this section divests any lien acquired by virtue of a levy under final process. The case at bar is a lien by judgment execution and levy. The distinctions between *mesne* and final process are familiar to the law for centuries. An execution was always final process.

Section 21 provides, that no creditor whose debt is provable, under this act, shall be allowed to prosecute to final judgment any suit in law or in equity therefor, against the bankrupt, until, &c.; evidently implying that no interference shall be had with judgments already obtained, until final discharge.

Section 35 provides, that if any person, being insolvent or in contemplation of insolvency, within four months before filing the petition by or against him, with a view to give a preference to any creditor, &c., *procures* any part of his property to be attached, sequestered or seized on execution, &c., the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefitted thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, &c., is made in fraud of the provisions of this act, the same shall be void.

The papers served on the execution creditors' behalf, on this motion, as well as the efforts made by Bernstein to discharge the attachment and set aside the judgment, negative any collusion or procurement by the judgment creditors. In fact, the proceedings to judgment, in the case of *Wilmerding, Hoguet & Co.* agt. *Bernstein,* were warmly contested.

The 25th section provides for sale of property as perishable, by assignee or by the messenger under the order of the court. By analogy, where property is advertised for sale under execution by a sheriff, and this court in bankruptcy enjoins him, we submit that such injunction may be modified so as to allow the sale to take place, on the ground of the perishable nature of the goods.

*Storm* agt. *Waddell* (2 *Sandf. Ch.* 494). This was a decision under the former law. It was held, an assignee takes the property of a debtor subject to the lien of a creditor whose creditor's suit was commenced before proceedings in bankruptcy.

Section 39, which is the one that provides for involuntary bankruptcy, allows the proceedings as against debtors, who,

1st. Depart from, &c., with intent to defraud creditors; or,

2d. Who, being absent *with such intent, remain absent;*

3d. Who shall *conceal* himself to avoid service of process in an action to recover a debt provable under the act;

4th. Who shall *conceal and remove any of his property* to avoid its being attached, taken or sequestered on legal process; or,

5th. Shall *make any assignment, gift, sale, conveyance or transfer* of his estate, &c., with intent to delay, defraud or hinder his creditors, or,

6th. *Who has been arrested or held in custody*, under or by virtue of *mesne* process

of execution, issued out of any court of any state, district or territory, within which the debtor resides or has property—such *mesne* process of execution founded on a demand, provable under this act, exceeding $100; such process remaining in force, &c., for a period of seven days: or,

7th. Who has been *actually imprisoned* for more than seven days, in a civil action founded on contract for the sum of $100 or upwards; or,

8th. Who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall

(*a.*) Make any payment, gift, grant, sale, conveyance or transfer of money, property, estate, right or credits;

(*b.*) Or give any warrant to confess judgment;

(*c.*) Or procure or *suffer* his property to be taken on legal process, *with intent* to give a preference to one or more of his creditors, or to any person or persons his indorsers, bail, sureties, or otherwise; or,

9th. With the intent, by such disposition of his property, to defeat or delay the operation of this act; or,

10th. Who, being a banker, merchant or trader, has fraudulently stopped or suspended payment, and not resumed payment of his commercial paper within a period of fourteen days.

This section further provides, that if such person shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred, contrary to this act; provided, the person receiving such payment or conveyance had reasonable cause to believe that a fraud on the act was intended, or that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy.

A careful inspection of this section, which is the foundation of all proceedings for compulsory bankruptcy, shows that the *case of a bona fide creditor, who has by due diligence acquired a prior lien on the personal property of the debtor, by judgment and execution, is not within the act;* nor is the *bona fide* procuring of such judgment, and the acquiring of such lien by execution, ground for involuntary bankruptcy. It is only in the case where the debtor has procured or suffered his property to be taken on legal process, with intent to give a preference to a credit.

This could not be predicated of this case, which is one of contest of the creditors, Wilmerding, Hoguet & Co., with the alleged bankrupt.

Judge BENEDICT has lately had this point before him, in the case of Jeremiah G. Wilbur, a bankrupt. It arose on a motion made in behalf of certain judgment creditors of the bankrupt, to dissolve an injunction restraining them from proceeding to collect on execution the amount of certain judgments which they had obtained in a state court, and upon which execution had been issued and a levy made upon certain personal property, prior to the filing of the bankrupt's petition.

The learned judge says: "It is clear upon principle, and also, as I think, from the general scope of the provisions of the bankrupt act, that any rights which these judgment creditors have acquired in the personal property in question, by reason of their levy made prior to the filing of the bankrupt's petition, are to be preserved to them, and cannot be destroyed by the subsequent proceedings in bankruptcy." He further proceeds and discusses the power of the district court to assume possession and control of the property levied on by the sheriff, prior to the proceedings in bankruptcy, and says: "It is a question not free from difficulty. But if such a power exists, it is to be exercised with caution, and not to be resorted to unless it appear necessary to protect some substantial right or prevent injustice."

We therefore claim:

*First.* That this court, under the involuntary clause, has no jurisdiction over the present case, as against Wilmerding, Hoguet & Co.'s prior lien; because,

1st. They, the said named creditors, in the vigilant and *bona fide* prosecution of their legal remedies, had acquired a prior right to and lien on the property of the debtor, by judgment, execution and levy, prior to the proceedings under the 39th section.

D. McADAM, *counsel for the petitioning creditors,* canvassed at length the various clauses of the act, and referred to analogous provisions under the original bankrupt act of 1802. He contended that the execution creditors had acquired no priority over the petitioning creditors.

*Mr.* LEVY *was heard as counsel for the bankrupt.*

*Per curiam,* BLATCHFORD, J.　The firm of Wilmerding, Hoguet & Co. obtained a judgment against the bankrupt on the 21st of October, 1867, for $2,930 30-100, in a suit in the supreme court of New York, for a money demand on contract, founded on two promissory notes made by him, and on a sale and delivery of goods to him.　The suit was commenced on the 25th of September, 1867, and the judgment was obtained in due course by default after personal service of a summons.　On the same day on which the judgment was obtained, an execution was issued thereupon to the sheriff of the city and county of New York, and he made a levy thereunder on a stock of goods in the store of the bankrupt, in the city of New York.　The goods were advertised for sale by the sheriff, for the 28th of October, 1867; but the sale was stayed by the state court, and a motion was made by the bankrupt in that court to set aside the judgment, execution and levy, but the motion was denied.

On the commencement of the suit in the state court, an attachment was issued on it, under which the same stock of goods above mentioned had been attached.　A motion was made by the bankrupt in the state court to dissolve that attachment, which motion was heard at the same time with the other motion before mentioned, and was also denied.

After the denial of these motions, the sheriff advertised the goods for sale for the 22d of November, 1867.

On the 21st of November, 1867, the petition in this matter, praying for an adjudication of bankruptcy, was filed; and this court, under the 40th section of the bankruptcy act, at the time it made an order to show cause why the prayer of the petition should not be granted, issued an injunction restraining the sheriff from selling the goods under the execution on the levy made. There has since been an adjudication of bankruptcy in this matter.

In a representation that the goods levied on were of a perishable character, and were deteriorating in value, this court made an order modifying the injunction so as to permit the sheriff to sell the goods under the execution, and directing the sheriff to hold the proceeds until the further order of this court concerning the same.

The plaintiffs in the judgment now move the court to dissolve the injunction wholly, and to allow the proceeds of the sale to be applied in paying the judgment and the costs, and the charges and fees of the sheriff.

There is nothing shown to impeach the *bona fides* of the judgment, execution and levy; no collusion in regard to them appears, and the bankrupt resisted them to his utmost. The lien of a levy made under an execution issued on a final judgment, such as is that in the present case, provided such lien attached before the commencement of the proceedings in bankruptcy, is preserved by the bankruptcy act, and is to be respected by this court, whether this court takes to itself the administration of the property on which the lien is imposed, and applies it towards the satisfaction of the lien, or whether it allows the state officer who is executing the state process to do so. In this case, the property has been sold, and the proceeds of it are in the hands of the sheriff. No advantages can result from requiring the money to be paid into this court, with a view to its application by this court in satisfaction of the lien on the property.

An order will be entered allowing the sheriff to apply the proceeds of the sale of the property towards the discharge of the amount which he is required by the execution to make, including his charges and fees thereon, and directing him to pay the overplus, if any, to the assignee of the bankrupt, if there be one, and if there be none, then to the clerk of this court, to the credit of the bankrupt's estate.